1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

CRAIG W.,

7                                    Plaintiff,

8          v.

9    COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.
10

Case No. 2:22-cv-00089-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11          Plaintiff filed this action pursuant to 42 U.S.C. §405(g) for judicial review of

12   Commissioner's denial of her application for supplemental security income ("SSI")

13   benefits. The parties have consented to have this matter heard by the undersigned

14   Magistrate Judge. *See* 28 U.S.C § 636(c); Federal Rule of Civil Procedure 73; Local

15   Rule MJR 13.

16                                 ISSUES FOR REVIEW

17   A.  Whether the ALJ erred in determining plaintiff's RFC by improperly weighing the
        opinion evidence.
18

19   B.  Whether the ALJ erred at Step Five in determining that there were significant
        numbers of jobs in the national economy that plaintiff could perform.

20                               PROCEDURAL BACKGROUND

21          On August 12, 2013, plaintiff filed an application for SSI alleging a disability onset

22   date of June 6, 2011. Administrative Record ("AR") 170, 1203. Plaintiff's application was

23   denied upon initial review and upon reconsideration. AR 138-150, 152-165. At plaintiff's

24

25

request, Administrative Law Judge ("ALJ") Ilene Sloan held a hearing on May 19, 2015. AR 99. On August 4, 2015, ALJ Sloan issued a decision finding that plaintiff was not disabled. AR 170-183. On October 25, 2016, the Appeals Council ("AC") granted plaintiff's request for review and remanded for additional proceedings. AR 189-191.

On remand, ALJ Sloan held hearings on December 11, 2017, and March 19, 2018. AR 84-98; 59-83. On December 4, 2018, ALJ Sloan issued a partially favorable decision finding that plaintiff was disabled beginning March 28, 2018, because plaintiff's age category changed to "an individual of advanced age" and the Medical Vocational Guidelines directed a finding of "disabled." AR 47-49; 1273-1275. However, for the period prior to March 28, 2019, ALJ Sloan made a finding of "not disabled" because plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy based on the vocational expert's testimony." *Id*. On January 17, 2020, the Appeals Council denied review. AR 1-3; AR 1290-92. Plaintiff appealed.

On November 25, 2020, the United States District Court, Western District of Washington reversed and remanded for the ALJ to "reassess plaintiff's testimony about his mental health conditions, develop the record and redetermine plaintiff's RFC as necessary, and proceed to the remaining steps as appropriate" for the period prior to March 28, 2019.  AR 1302-1311.

On October 5, 2021, ALJ Laura Valente held a hearing. AR 1231-1256. On October 27, 2021, ALJ Valente issued a decision finding that plaintiff was not disabled between August 12, 2013 (the date the application was filed) and March 28, 2018. AR 1203-1220. The Appeals Council did not review the case, making the October 27, 2021,

1  the final decision of the Commissioner. AR. 1290-1293. Plaintiff seeks judicial review of

2  ALJ Valente's October 27, 2021 decision denying disability between August 12, 2013

3  and March 28, 2021. AR 2019-20.

4  <u>STANDARD OF REVIEW</u>

5        Pursuant to 42 U.S.C. §405(g), this Court may set aside the Commissioner's

6  denial of Social Security benefits if the ALJ's findings are based on legal error or not

7  supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

8  F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

9  reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

10  *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (citations omitted). The Court must consider the

11  whole record, "weighing both the evidence that supports and the evidence that detracts

12  from the Commissioner's conclusion. . . ." *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th

13  Cir. 2014).

14  <u>DISCUSSION</u>

15  **A. Whether the ALJ improperly weighed the opinion evidence.**

16        Plaintiff argues that the ALJ erred by failing to consider evidence relevant to his

17  limitations in his RFC. Dkt. 13 at 9-10. Specifically, plaintiff argues that the ALJ

18  improperly discounted her treating provider's opinion and "minimized the objective

19  evidence [by] rejecting any opinion evidence in support of a more restrictive RFC." Dkt.

20  13 at 11. Plaintiff contends that a more restrictive RFC limited to sedentary work, would

21  result in a finding of disabled under the medical vocational guidelines. Dkt. 13 at 14.

22        The Commissioner responds that plaintiff's "mere disagreement over which

23  conflicting evidence to credit, and which to reject, is not a valid basis for reversal." Dkt.

24  15 at 2. Further, the Commissioner responds that the ALJ reasonably evaluated the

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

opinion and testimonial evidence when assessing the RFC. *Id*.  The Commissioner states plaintiff's assertion that the ALJ should have assessed more restrictive limitations is "a competing interpretation of the record [which] is insufficient to show error under the substantial evidence review." *Id*. at 9.

A claimants RFC is what the claimant "can still do despite his or her limitations." SSR 96-8p, *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, (July 2, 1996). A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id*. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at * 1. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe*." Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing SSR 96–8p (1996); *see also* 20 C.F.R. § 416.945(a)(2). "Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'" *Id*. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (emphasis in original). If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* SSR 96-8p.

1    In this case, at Step Two, the ALJ found that plaintiff had the severe impairments

2  of obesity, osteoarthritis, degenerative joint disease of the left ankle, tarsal coalition,

3  posttraumatic stress disorder, bipolar disorder, antisocial personality disorder, panic

4  disorder, and anxiety disorder. AR. 1206. The ALJ also noted the following relevant

5  non-severe conditions from the prior decision of multilevel retrolisthesis of the lumbar

6  spine; small bilateral joint effusions of his knees, and mild acromioclavicular and

7  glenohumeral joint degeneration. *Id*. The ALJ noted that "[t]hese conditions did not

8  result in persistent and significant functional limitations and are therefore non[-]severe."

9  *Id*.

10    The ALJ further found plaintiff had the RFC to perform light work[1] except he

11  could sit for six hours and stand and/or walk for four hours, in an eight-hour day; could

12  frequently push and pull with the bilateral lower extremities (such as for operation of foot

13  pedals); could not work with the general public; could work in the same room with

14  coworkers and interact superficially and occasionally with coworkers but no coordination

15  of work activity; and could interact occasionally with supervisors. AR. 1208.

16    Plaintiff argues that the ALJ failed to include limitations in the RFC based on the

17  opinion evidence from plaintiff's medical providers. Specifically, plaintiff argues that the

18  ALJ failed to include an assessment of plaintiff's ability [to] work on a regular and

19  continuing basis; failed to provide clear and convincing reasons why there were no

20  limitations for crouching, kneeling, stooping, and crawling; failed to provide clear and

21

22  ---

[1] A job is considered light work "when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs." Social Security Ruling 83-10 (" SSR 83-10"), *Titles II and XVI: Determining Capability to do Other Work - - the Medical Vocational Rules of Appendix 2* (1983). A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. *Id*.

23

24

25

1  convincing reasons for not considering the effects of obesity on postural limitations;

2  failed to consider a sit and stand at will option, and failed to provide clear and

3  convincing reasons for not considering the effects of knee and ankle braces. Dkt.13 at

4  10-11.

5        In determining plaintiff's RFC, the ALJ evaluated the medical opinion evidence.[2]

6  AR. 1208-18. Plaintiff filed his application prior to March 27, 2017. Therefore, under the

7  applicable regulations, "a claimant's treating physician is given 'controlling weight' so

8  long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic

9  techniques and is not inconsistent with the other substantial evidence in [the claimant's]

10  case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. §

11  404.1527(c)(2); *see also* § 416.927. "To reject [the] uncontradicted opinion of a treating

12  or examining doctor, an ALJ must state clear and convincing reasons that are supported

13  by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citing

14  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original)

15  (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005))). However, "[i]f a

16  treating or examining doctor's opinion is contradicted by another doctor's opinion, an

17  ALJ may only reject it by providing specific and legitimate reasons that are supported by

18  substantial evidence." *Id*.

19

20

---

21  [2] Plaintiff also states in her brief that the ALJ erred in discounting plaintiff's symptoms testimony "despite an abundance of objective evidence supporting the plaintiff's allegations." Dkt. 13 at 12. Plaintiff also
22  argues that the ALJ failed to provide clear and convincing evidence with respect to limitations resulting from her mental impairments. *Id*. at 8.  Specifically, plaintiff argues that the ALJ discounted Dr. Carl Epp's and Dr. Patricia Kraft's opinions showing marked limitations resulting from his mental impairments. *Id*.
23  Since the Court is reversing the ALJ's decision and remanding the matter for a de novo hearing, the Court need not address these additional arguments. However, the ALJ shall address these issues at the hearing.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 6

On May 5, 2015, Dr. Shilling, plaintiff's treating physician, opined that plaintiff's chronic lumbar strain, degenerative joint disease right knee, and bilateral foot/ankle degenerative joint disease would have a moderate, or "significant interference in [his] ability to perform" the basic work-related activities of sitting, standing, walking, lifting, carrying, stooping, and crouching. AR 772. Dr. Shilling also opined that plaintiff's agoraphobia would have a marked, or "very significant interference with [his] ability to perform one or more basic work-related activities" AR 772. Dr. Shilling opined that plaintiff was severely limited, or "unable to meet the demands of sedentary work," which would last for 12-24 months. AR 773.

On May 11, 2015, Dr. Shilling opined that plaintiff could stand for one hour at a time for a maximum or four hours standing in a workday, could sit for fifteen minutes at a time for a maximum of four hours in a workday, and could occasionally lift twenty pounds and frequently lift ten pounds. AR 802.

The ALJ gave great weight to Dr. Shilling's May 11, 2015 opinion because it accounts for plaintiff's lower extremity impairments and is consistent with Dr. Shillings records that "note intact range of motion and lower extremity strength." AR 1214. However, the ALJ did not give weight to plaintiff's limitation to sitting for four hours noting that there was insufficient support or explanation for plaintiff's limitation because plaintiff did not have an impairment that would warrant such a restriction and because chronic lumbar strain was not a severe impairment. AR 1214-15. However, the ALJ found multilevel retrolisthesis of the lumbar spine a non-severe impairment. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1164 (9th Cir. 2008) (citing SSR 96–8p (1996); see also 20 C.F.R. § 416.945(a)(2). If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* SSR 96-8p.

In addition, Dr. Shilling referenced May 5, 2015, for the objective basis for the limitations in the May 11, 2015 opinion. AR 802. However, the ALJ also gave "very little weight" to no weight to Dr. Shilling's May 5, 2015 opinion stating that it was inconsistent with his other opinion, failed to provide narrative explanation or objective support, and because the treatment records are "devoid of any findings consistent with such extensive restriction." AR 1215. The notes on the May 5, 2015 opinion state that Dr. Shilling examined plaintiff on the same day for complaints of chronic back, right knee, and ankle pain. AR 773-774. The examination was remarkable for limited back flexion to 45 degrees. While Dr. Shilling noted an x-ray of the lumbar spine was normal, the x-ray was from 2013. *Id*. The examination provides an explanation and support for Dr. Shilling's May 5, 2015 opinion with respect to his back impairment.

The examination also found bilateral flat feet, some tenderness along medial joint margin of the right knee, moderate degenerative spurring of the talonavicular joint of the left ankle, and mild thinning of the talonavicular joint of the right ankle. AR 774. A left knee x-ray showed a small degree of thinning of the medial compartment. *Id*. Dr. Shilling recommended possible physical therapy or orthopedic consult and a trial or orthotics. AR 773, 774. The ALJ failed to explain the inconsistencies between the two opinions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (stating that "the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review).

1    In fact, the ALJ cited evidence from the medical record which supports Dr.

2    Shilling's opinion. The ALJ noted that Dr. Randolph Anderson, D.P.M., provided a letter

3    stating that examination and x-rays were remarkable for a tarsal coalition in the left foot

4    noting that it was "a genetic disorder that resulted in the bones in the rear part of the

5    foot being fused together severely limiting the normal motion of the rear portion of the

6    foot, which had resulted in degenerative arthritis of the foot and a spastic flat foot." AR

7    1210. In the letter, Dr. Anderson indicated that the arthritis will be progressive. AR 806.

8    Dr. Anderson noted that plaintiff is "limited to the amount of time he can be on his feet

9    working" and the "longer he is on his feet and the more vigorous the activity the more

10   pain he will have in his feet and legs." *Id*. The ALJ further cited x-rays, an MRI, and a

11   CT scan taken between 2016 and 2017, which shows the progression of this condition.

12   AR 2010-11. The ALJ indicated that Dr. David Bruce noted severe ankle pain and

13   severely limited subtalar joint range of motion on the left and some decreased

14   sensation. *Id*. Dr. Bruce prescribed orthotics. AR 2011.

15   The ALJ indicated that Dr. Peter Weir, consultative examiner, noted that plaintiff

16   had braces on his left ankle and knees, he walked with a "prominent limp favoring the

17   left leg and was unable to walk tandem." AR.1211. He used a cane for ambulation. *Id*.

18   On examination, Dr. Weir found a reduction of range of motion in the left ankle. While

19   Dr. Weir found 5/5 strength in the lower extremities and found plaintiff could perform

20   some tasks on both lower extremities, Dr. Weir opined plaintiff could stand and/or walk

21   for two hours in an eight-hour day and could only occasionally climb, stoop, and crawl.

22   AR. 1211; 1215.

23

24

25

1    The ALJ, however, also discounted these other physician's opinions and failed to

2    credit any physician's opinion contradicting Dr. Shilling's opinion that plaintiff's physical

3    limitations significantly interfere with his ability to sit, stand, walk, lift, carry, stoop, and

4    crouch.[3] Therefore, the Court concludes that the ALJ failed to give "clear and convincing

5    reasons" or even "specific and legitimate" reasons for rejecting Dr. Shilling's limitations

6    as argued by plaintiff.

7    In addition, despite the stated evidence and plaintiff's obesity, the ALJ did not

8    include any limitations on plaintiff's ability to climb, balance, stoop, kneel, crouch, crawl,

9    and determined that plaintiff could frequently[4] push and pull using his lower extremities.

10   The ALJ must consider the limiting effects of plaintiff's obesity when assessing his RFC.

11   Social Security Ruling 19-2p ("SSR 19-2p), *Titles II and XVI: Evaluating Cases Involving*

12   *Obesity*, 84 FR 22924-01, 2019 WL 2161798 (May 20, 2019). The combined effects of

13   obesity with other impairments may be greater than the effects of each of the

14   impairments considered separately when the impairments effect weight-bearing joints

15   causing more pain and functional limitations than the impairment alone. *Id*. "As with any

16   other impairment, [the ALJ] will explain how [the Administration] reached our conclusion

17   on whether obesity causes any limitations." *Id*.

---

[3] The ALJ gave some weight to Dr. R. Anderson with respect to standing, walking, and postural limitation,
but found his statement "vague and does not provide any specific functional limitations." AR. 2015. The
ALJ gave weight to Dr. Weir's lifting and carrying limitations but found the rest of the opinion "not well
supported or consistent with the record." *Id*. The ALJ gave Dr. Marshall Andersons opinion from a
February 2017 DSHS form little weight because he referred to imaging findings instead of completing the
examination portion of the form, and because he considered plaintiff's shoulder and knee conditions,
which are non-severe impairments. *Id*. Finally, the ALJ gave no weight to Dr. Myrna Palasi's, DSHS
contractor's, opinion that plaintiff could perform less than sedentary work due to pain, because Dr. Palasi
relied on a review of the Dr. Shilling and Anderson's opinions in reviewing the record. AR. 2015-16.
[4] "Frequent" means occurring from one-third to two-thirds of the time. SSR 83-10.

1   In this case, the ALJ found plaintiff's obesity to be a severe impairment. In

2   addressing plaintiff's obesity in the RFC, the ALJ provided a generic statement that "the

3   effects of obesity . . . has been considered and accounted for in the residual functional

4   capacity . . . for a limited range of light work." However, this statement is not sufficient

5   pursuant to SSR 19-2p given the specific facts in this case. *See* SSR 19-2p (stating that

6   with obesity, a person may have limitations in any of the exertional functions of sitting,

7   standing, walking, lifting, carrying, pushing and pulling, and limitations in the non[-]

8   exertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling).

9   In this case, the ALJ found plaintiff's foot condition a severe impairment which is

10  supported by objective evidence, and there is evidence of knee and ankle pain. The ALJ

11  also found that multilevel retrolisthesis of the lumbar spine, small bilateral joint effusions

12  of his knees, and mild acromioclavicular and glenohumeral joint degeneration were non-

13  severe impairments. Given plaintiff's impairments and the medical opinion evidence, the

14  ALJ should have explained why plaintiff's obesity, in combination with his other

15  impairments, did not causing additional exertional and non-exertional limitations.

16  Therefore, for the foregoing reasons, the Court concludes that the ALJ erred in

17  assessing the medical opinion evidence.  The ALJ failed to provide "clear and

18  convincing reasons" or even "specific and legitimate" reasons for rejecting Dr. Shilling's

19  limitations regarding a sit and stand option, failed to explain the rejection of limitations

20  for crouching, kneeling, stooping, and crawling, and failed to provide a basis for

21  including frequent pushing and pulling with the bilateral lower extremities, given

22  plaintiff's severe and non-severe impairments. The ALJ also failed to sufficiently

23  address plaintiff's obesity in combination with plaintiff's other impairments.

24

25

1
2

**B. Whether the ALJ erred at Step Five in determining that there were a substantial number of jobs in the national economy that plaintiff could perform.**

3    Plaintiff makes several arguments with respect to the ALJ's determination that

4 other work existing in substantial numbers in the national economy that he could

5 perform on a sustained basis. Dkt. 13. First, plaintiff argues that the job numbers of the

6 jobs identified by the ALJ that he could perform "do not even come close to the 25,000

7 'close call' precedent set by the Ninth Circuit." Dkt. 13 at 4 (citing *Gutierrez v. Comm'r of*

8 *Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). The Defendant responds that plaintiff

9 "misconstrues the holding in *Gutierrez*." Dkt. 15 at 9.

10    While it is the Commissioner's burden at step five to establish a significant

11 number of jobs exists in the national economy, the Ninth Circuit has "never set out a

12 bright line rule" as to what is a "significant number." *Beltran v. Astrue*, 700 F.3d 386, 389

13 (9th Cir. 2012). In determining what constitutes a significant number, the Court may

14 compare the number of jobs to what Courts have found in other cases. *Beltran*, 700

15 F.3d at 389. In *Gutierrez v. Comm'r of Soc. Sec.*, the Ninth Circuit found that while the

16 ALJ's determination that 25,000 jobs in the economy were "a close call," that number

17 nevertheless was sufficient to meet the statutory standard. *Gutierrez v. Comm'r of Soc.*

18 *Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014).

19    In this case, a VE testified at the hearing that 15,300 subassembler jobs, 19,000

20 small products assembler jobs, and 16,100 production assembler jobs exist nationally,

21 which the ALJ found to be a significant number in the national economy. AR 1219.

22 These numbers total 50,400 nationally. In *Gutierrez*, the vocational expert testified that

23 plaintiff could perform work as an assembler, with 15,000 jobs available nationally, or as

24
25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

an almond blancher, with 10,000 jobs available nationally, totaling 25,000 jobs

nationally. *Gutierrez*, 740 F.3d at 521.

In making his argument, plaintiff instead compares the combined total jobs

nationally in *Gutierrez* (25,000) with each individual job listed by the vocational expert at

plaintiff's hearing. Dkt. 13, at 4. This is an inaccurate interpretation and application of

*Gutierrez*. Accordingly, the Court concludes the ALJ's determination that significant

numbers of jobs exist in the national economy is supported by substantial evidence.

*See Gutierrez*, 740 F.3d at 521 (25,000 jobs nationally is significant); *Moncada v.

Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (concluding 64,000 jobs nationally is

significant).

Next, plaintiff argues that the jobs identified by the ALJ were "inappropriate for

someone with the combination of plaintiff's severe and non-severe limitations." Dkt. 13

at 5. Plaintiff argues that, as a result, the ALJ did not present an accurate hypothetical

to the vocational expert ("VE") because the hypothetical did not properly include all

plaintiff's limitations. Dkt. 13 at 5-6. Since it will be necessary for the ALJ to proceed

through these following steps after reassessing the medical opinion evidence and

testimonial evidence, the Court need not address these issues.

**C. Remedy**

Plaintiff requests that the case be remanded for the award of benefits. Dkt. 13 at

12-14. Plaintiff argues that the record is not uncertain or ambiguous, the record is

extensive and contains treatment records from throughout the relevant period, there

have already been two remands for new hearings, and additional proceedings would not

remedy the ALJ's errors. *Id*. at 13-14. Plaintiff states that "a more restrictive RFC would

result in a finding of disabled under the Medical Vocational Grid Rules ("the Grids"). *Id.* at 14.

The Commissioner responds that, assuming the ALJ erred, the record "as a whole" creates serious doubt that plaintiff is disabled. Dkt. 15 at 10. The Commissioner contends an award of benefits is inappropriate because there are factual issues that need resolving citing conflicting evidence with Dr. Shilling's opinions, between the state agency consultants and other medical opinions, and credibility concerns raised by the ALJ. *Id.* The Commissioner further argues that the plaintiff cannot show harm based on the vocational expert's testimony. *Id.* at 7.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the Court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the Court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where:

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

1    *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th

2    Cir. 2014)). The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each

3    element is satisfied, the district Court still has discretion to remand for further

4    proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

5         Plaintiff states that if his treating physician was credited, he would be limited to

6    sedentary work and would be found disabled under the Grids but failed to provide any

7    further explanation. At the hearing, on questioning from plaintiff's attorney, the

8    vocational expert indicated that the light jobs identified could still be applicable with

9    further limitations related to sitting/standing and occasional pushing and pulling. AR.

10   1253-4. As such, the question remains as to whether plaintiff could still perform light

11   jobs, even were the ALJ to credit Dr. Shilling's opinion and include additional limitations.

12   Based on a review of the record, the Court concludes that the record is not free from

13   important and relevant issues that need addressing by the ALJ.

14        Therefore, this matter is reversed and remanded for further administrative

15   proceedings, including a *de novo* hearing. *See Garrison v. Colvin*, 759 F.3d 995, 1021

16   (9th Cir. 2014) (stating Courts have the flexibility to remand for further proceedings

17   when the record as a whole creates "serious doubt" as to whether the claimant is

18   disabled within the meaning of the Social Security Act); *see also Ernest F. v. Comm'r of

19   Soc. Sec.*, No. 2:19-CV-01568, 2020 WL 6708080, at *4–5 (W.D. Wash. Nov. 16, 2020)

20   (remanding for further proceedings where there was significant doubt concerning

21   whether plaintiff would be disabled, even if examining physician's opinion was credited).

22                                   CONCLUSION

23        For the foregoing reasons, the Court reverses the Commissioner's final decision

24   and remands the case for further administrative proceedings with respect to ALJ

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15

Valente's determination that he is not disabled from August 12, 2013 through March 28, 2018. The ALJ's decision finding that plaintiff was disabled beginning on March 28, 2018, is not before the Court. As such, that decision is undisturbed.

Dated this 12th day of January, 2023.


Theresa L. Fricke
United States Magistrate Judge